# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

| | |
|---|---|
| AUTOZONE PARTS, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 2:15-cv-2706-SHM-tmp |
| | ) |
| RED HOT INTERNATIONAL, LLC, | ) |
| MIDLAND AMERICAN CAPITAL | ) |
| CORPORATION, RHI GLOBAL, | ) |
| LLC, DAVID BRANCH, and | ) |
| MICHEAL BROWN, | ) |
| | ) |
| Defendants. | ) |

**ORDER**

Before the Court is the Motion for Summary Judgment (the "Summary-Judgment Motion") filed by Defendant Midland American Capital Corp. ("Midland") on October 26, 2016. (ECF No. 40.) No party has filed a response to the Summary-Judgment Motion, and the deadline for doing so has passed. L.R. 7.2(a)(2).

For the reasons stated below, the Summary-Judgment Motion is GRANTED.

**I. HISTORY**

On October 28, 2015, Plaintiff AutoZone Parts, Inc. ("AutoZone") filed a Complaint for Interpleader (the "Interpleader Complaint"). (ECF No. 1.) The Interpleader Complaint names five defendants: Midland; Red Hot International, LLC ("Red

Hot"); RHI Global, LLC ("RHI"); David Branch ("Branch"); and Micheal Brown ("Brown").[1] (Id. ¶¶ 2–6.)

The Interpleader Complaint alleges the following: In April 2014, AutoZone entered into an agreement (the "Vendor Agreement") to purchase lighters from Red Hot. (Id. ¶¶ 10, 27.) Red Hot began selling lighters to AutoZone. (Cf. id. ¶¶ 24, 27 (discussing invoices).) In a letter to AutoZone dated February 9, 2015, Red Hot represented that, as of October 1, 2014, it had "assign[ed] its performance obligations under the April 2014 Vendor Agreement to [RHI] and that all purchase orders should be directed to [RHI] and not [Red Hot]." (Id. ¶ 14.)

In March 2015, Midland filed suit against AutoZone in New York state court. (Id. ¶ 18.) Midland's complaint (the "Midland Complaint") is attached to the Interpleader Complaint. (See id. ex. E.) The Midland Complaint alleged that, in March 2014, Midland and Red Hot had entered into a Factoring and Supply Agreement ("FSA").[2] (Midland Compl. ¶ 3.) Under the FSA,

---

[1] Brown's first name is spelled "Micheal" in the caption of the Interpleader Complaint. In a later filing, AutoZone explains, "This is how Mr. Brown's name is spelled in materials appearing on the Florida Secretary of State's website relating to [RHI]. It is a typographical error." (Pl.'s Mot. to Dismiss Def. Micheal Brown Without Prejudice, ECF No. 28 ("Mot. to Dismiss Brown").) This Order corrects the error where doing so would not alter the caption or the title of a document.

[2] One authority describes the practice of "factoring" as follows:

> "[F]actoring" in modern commercial practice
> is understood to refer to the purchase of

2

"Midland purchased certain accounts receivable of [Red Hot], and became the irrevocable assignee of Red Hot's accounts receivable." (Id.) The Midland Complaint alleged that, "[b]y virtue of its failure to pay pursuant to the terms of [certain invoices dated between October 2014 and December 2014], AutoZone has breached its contract with Red Hot to make payment, and Midland is the assignee of those contractual rights." (Id. ¶ 11.) The invoices totaled $72,824.00. (Id. ¶ 12; see also Interpleader Compl. ¶ 19.) Midland and AutoZone reached a settlement addressing the invoices in October 2015. (Interpleader Compl. ¶ 24.)

In the Interpleader Complaint, AutoZone admits that, notwithstanding the settlement, it still owes payment for distinct invoices "pertain[ing] to goods . . . ordered between November 2014 and March 2015." (Id. ¶¶ 27, 30; see also id. exs. J, K

---

        accounts receivable from a business by a "factor" who thereby assumes the risk of loss in return for some agreed discount. Indeed, the factor has emerged primarily as a financier, often a finance company or similar institution, which provides its clients (usually manufacturers or other suppliers of goods) with needed working capital and other financial assistance by purchasing their accounts receivable. Thus, a "factor" buys accounts receivable at a discount, the factor's seller obtains immediate operating cash, and the factor profits when the face value of the account is collected.

32 Am. Jur. 2d Factors and Commission Merchants § 2 (2017).

(schedule of invoices and copies of invoices).) Those invoices total $111,101.76. (See, e.g., id. ¶ 27.) AutoZone alleges that it has received "conflicting demands" for payment "from various persons purporting to represent the interests of [Red Hot] and/or [RHI]." (Id. ¶ 20; see also id. ¶¶ 21-23 (detailing demands).) AutoZone alleges that it "is unable to assess the validity of the competing claims made by the Defendants in this matter."[3] (Id. ¶ 26.) AutoZone sought to interplead $111,101.76 (the "Disputed Funds") so that the Court could resolve Defendants' interests in the Funds. (Id. ¶¶ 28, 34.)

On the day it filed the Interpleader Complaint, AutoZone filed a Motion for Leave to Deposit Funds in the Court's Registry (the "Deposit Motion"). (ECF No. 4.) The motion was granted on October 29, 2015. (Order Granting Mot. for Leave to Deposit Funds in Ct.'s Registry, ECF No. 13.) On or about November 17, 2015, AutoZone sent the Clerk's Office a check for the amount of the Disputed Funds. (Not. of Deposit of Funds in Ct.'s Registry, ECF No. 15 ("Deposit Notice").)

---

[3] The Interpleader Complaint does not explain why Branch or Brown might have claims to the Disputed Funds. An email attached to the Interpleader Complaint suggests that Branch owns Red Hot. (Interpleader Compl. ex. H.) The Interpleader Complaint alleges that Brown is RHI's registered agent. (Id. ¶ 4.) A letter attached to the Interpleader Complaint purports to be from an attorney "represent[ing] the interests of [Brown] and [RHI]." (Id. ex. F.)

4

On December 21, 2015, Branch filed a document titled "Objection to [AutoZone's] Complaint for Interpleader" (the "Branch Objection"). (ECF No. 20.) Branch argues that "[t]he defendants in this matter are all victims of an orchestrated fraud by AutoZone." (Id. ¶ 1.) The Objection does not assert that Branch is entitled to any portion of the Disputed Funds. (See generally id. ¶¶ 1–3.)

On February 11, 2016, AutoZone filed a motion to dismiss Brown from the action. (Mot. to Dismiss Brown.) The motion was granted later that day. (Order Granting Mot. to Dismiss Def. Micheal Brown Without Prejudice, ECF No. 29.)

The same day, Midland answered the Interpleader Complaint (the "Midland Answer"). (Def.'s Answer to Interpleader Compl., ECF No. 30.) After answering the allegations of the Complaint, Midland asked, inter alia, that the Court "enter an order dismissing [AutoZone] from the action," and that the Court "determine that the Disputed Funds constitute 'Collateral' of Red Hot, to which Midland has a first priority security interest pursuant to the [FSA] . . . and therefore, Midland is entitled to all of the Disputed Funds . . . ." (Id. at 3.)

On June 14, 2016, AutoZone filed a Motion for Discharge, Relief from Liability, and Permanent Injunction (the "Discharge Motion"). (ECF No. 35.) The Discharge Motion sought an order "(1) discharging AutoZone from this statutory interpleader ac-

5

tion; (2) relieving AutoZone from any liability as to the [Disputed Funds], and (3) enjoining all further actions with respect to the disputed funds." (Id. at 1.)  On June 15, 2016, the Court entered an order granting the Discharge Motion (the "Discharge Order"). (Order Granting Mot. for Discharge, Relief from Liability, and Permanent Inj., ECF No. 36.)  That order stated that "AutoZone is hereby discharged from this statutory interpleader action; AutoZone is relieved from any liability as to the disputed funds that have been deposited into the Court's registry; and any further actions with respect to the disputed funds are permanently enjoined." (Id. at 1.)

On the same day the Court entered the Discharge Order, Midland filed a motion seeking the entry of defaults against Red Hot and RHI. (Def. Midland Am. Capital Corp.'s Mot. for Entry of Defaults Against Defs. Red Hot Int'l, LLC and RHI Global, LLC, ECF No. 37.) Midland stated that, although Red Hot and RHI had been served with process, neither had responded to the Interpleader Complaint. (Id. at 1.) On August 8, 2016, the Clerk of Court docketed an Entry of Default as to Red Hot and RHI. (Entry of Default, ECF No. 39.)

On October 26, 2016, Midland filed the Summary-Judgment Motion. Midland argues that it "is the only Defendant who has asserted a claim to the Disputed Funds," and that "it is entitled

to recover the Disputed Funds." (Id. ¶ 4.) No party has responded to the Summary-Judgment Motion.

**II. JURISDICTION**

In the Interpleader Complaint, AutoZone alleges that the Court has original jurisdiction over this action pursuant to the federal interpleader statute, 28 U.S.C. § 1335. Section 1335(a) establishes certain jurisdictional requirements:

> The district courts shall have original jurisdiction of any civil action of interpleader or in the nature of interpleader filed by any . . . corporation . . . having in his or its custody or possession money or property of the value of $500 or more . . . if (1) [t]wo or more adverse claimants, of diverse citizenship as defined in [§ 1332(a) or (d)] of this title, are claiming or may claim to be entitled to such money or property . . . ; and if (2) the plaintiff has deposited such money or property . . . into the registry of the court, there to abide the judgment of the court . . . .

The requirements of § 1335(a) are met here. First, AutoZone filed this action having in its possession $111,101.76. (Interpleader Compl. ¶¶ 27–28.)

Second, the § 1335(a) diversity requirement is met. As a threshold matter, when AutoZone filed the action, multiple adverse claimants "claim[ed] . . . to be entitled" to the Disputed Funds. (See, e.g., id. ¶¶ 20–23.) "Statutory interpleader requires only minimal diversity, or diverse citizenship between at least two adverse claimants." UBS Fin. Servs., Inc. v. Kaufman,

No. 3:15-CV-00887-CRS, 2016 WL 3199535, at *3 (W.D. Ky. June 8, 2016) (citing State Farm Fire & Cas. Co. v. Tashire, 386 U.S. 523, 530 (1967)). Because the test is diversity among adverse claimants, AutoZone's citizenship is not at issue. In statutory-interpleader actions, courts do not consider the "disinterested stakeholder's citizenship." Id. (citing cases). "[I]nterpleader jurisdiction is determined at the time suit is filed and subsequent events do not divest the court of jurisdiction once properly acquired." Walker v. Pritzker, 705 F.2d 942, 944 (7th Cir. 1983); see also Auto Parts Mfg. Mississippi, Inc. v. King Const. of Houston, L.L.C., 782 F.3d 186, 193–94 (5th Cir. 2015) (citing Walker).

The Interpleader Complaint alleges, and Midland agrees, that Midland is a Nevada corporation with its principal place of business in New York. (Interpleader Compl. ¶ 3; Midland Answer ¶ 3.) The Interpleader Complaint alleges that several of the other adverse claimants are Florida citizens for diversity purposes. (Interpleader Compl. ¶¶ 2, 4–6.) There is minimal diversity.

Third, on the day it commenced this action, AutoZone filed a motion seeking leave to deposit the Disputed Funds into the Court's registry. (Deposit Motion.) After receiving permission, AutoZone deposited the funds. (Deposit Notice.) That meets § 1335(a)'s deposit requirement. See, e.g., Columbus Life

8

Ins. Co. v. Walker-Macklin, No. 1:15-CV-535, 2016 WL 1588515, at *2 (S.D. Ohio Apr. 19, 2016).

The Court has original jurisdiction over this action under § 1335(a).

**III. STANDARDS**

    **A.    Interpleader**

The Sixth Circuit has discussed the two-stage process governing interpleader actions:

> Interpleader is an equitable proceeding that "affords a party who fears being exposed to the vexation of defending multiple claims to a limited fund or property that is under his control a procedure to settle the controversy and satisfy his obligation in a single proceeding." An interpleader action typically proceeds in two stages. During the first stage, the court determines whether the stakeholder has properly invoked interpleader, including whether the court has jurisdiction over the suit, whether the stakeholder is actually threatened with double or multiple liability, and whether any equitable concerns prevent the use of interpleader. During the second stage, the court determines the respective rights of the claimants to the fund or property at stake via normal litigation processes, including pleading, discovery, motions, and trial.
>
> "When the court decides that interpleader is available" -- typically, at the conclusion of the first stage -- "it may issue an order discharging the stakeholder, if the stakeholder is disinterested, enjoining the parties from prosecuting any other proceeding related to the same subject matter, and directing the claimants to interplead . . . ."

United States v. High Tech. Prod., Inc., 497 F.3d 637, 641 (6th Cir. 2007) (quoting 7 Charles Alan Wright et al., Federal Practice and Procedure §§ 1704, 1714 (3d ed. 2001)).[4]

The Court has completed the "first stage." (See generally Discharge Mot.; Discharge Order.) The "second stage" remains: resolving the respective rights of the claimants to the Disputed Funds "via normal litigation processes." Midland's Summary-Judgment Motion seeks to resolve the dispute. Summary judgment is an appropriate way to resolve the second stage of an interpleader action. See, e.g., Genworth Life Ins. Co. v. Oliver, No. 11-14531, 2012 WL 4048875, at *3 (E.D. Mich. Aug. 9, 2012) (citing cases), report and recommendation adopted, No. 11-14531, 2012 WL 4049048 (E.D. Mich. Sept. 13, 2012); cf. N.Y. Life Ins. Co. v. Terry, No. 5:15-CV-353-HAI, 2017 WL 102965, at *7 (E.D. Ky. Jan. 10, 2017) (resolving second stage of interpleader action on summary judgment).

**B. Summary Judgment**

Under Federal Rule of Civil Procedure 56, a court shall grant a party's summary-judgment motion "if the movant shows that there is no genuine dispute as to any material fact and the

---

[4] A footnote in High Technology Products distinguishes between rule interpleader under Federal Rule of Civil Procedure 22 and statutory interpleader based on 28 U.S.C. § 1335. 497 F.3d at 641 n.1. High Technology Products was a rule-interpleader case, but the Sixth Circuit stated that "the general principles discussed in this section apply to both rule and statutory interpleader." Id.

10

movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Although summary judgment must be used carefully, it "is an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action[,] rather than a disfavored procedural shortcut." FDIC v. Jeff Miller Stables, 573 F.3d 289, 294 (6th Cir. 2009) (quotation marks and citations omitted).

No party has responded to the Summary-Judgment Motion.[5] However, a "'party is never required to respond to a motion for summary judgment in order to prevail since the burden of establishing the nonexistence of a material factual dispute always rests with the movant.'" FTC v. E.M.A. Nationwide, Inc., 767 F.3d 611, 630 (6th Cir. 2014) (quoting Smith v. Hudson, 600 F.2d 60, 64 (6th Cir. 1979)). "[E]ven where a motion for summary judgment is unopposed, a district court must review carefully the portions of the record submitted by the moving party to determine whether a genuine dispute of material fact exists." Id.

**IV. ANALYSIS**

No remaining party has responded to the Summary-Judgment Motion. The Court must review those portions of the record sub-

---

[5] As noted above, Branch filed an "Objection to Plaintiff's Complaint for Interpleader." The Objection does not argue, however, that that Branch is entitled to any portion of the Disputed Funds.

11

mitted by Midland to determine whether there is a genuine dispute as to any material fact.

Midland states the following facts to support its claim to the Disputed Funds. In March 2014, Red Hot and Midland entered into the FSA. (Statement of Undisputed Material Facts in Supp. of Mot. for Summ. J. by Midland Am. Capital Corp. ¶ 15, ECF No. 42 ("SUMF").[6]) Under the FSA, Red Hot secured certain obligations by granting Midland "a continuing, first priority security interest in 'Collateral' which is defined as [Red Hot's] 'now owned and hereafter acquired Accounts, Chattel Paper, Inventory, Equipment, Instruments, Investment Property, Documents, Letter of Credit Rights, Commercial Tort Claims, and General Intangibles[.]'" (Id. ¶ 18.)

Red Hot later defaulted under the FSA. (Id. ¶¶ 24–25.) As a result, Midland demanded various forms of FSA-permitted relief. (Id. ¶ 26.) Midland originally sought to recover more than $523,000 from Red Hot. (Id. ¶ 28.) The settlement of Midland's suit with AutoZone covered some of that amount, but as of October 17, 2016, Red Hot owed Midland "not less than $432,460.00." (Id. ¶¶ 28, 32.)

The Disputed Funds are amounts AutoZone owed Red Hot, based on invoices for lighters that AutoZone ordered from Red Hot be-

---

[6] Each SUMF paragraph cites other record evidence. (See generally SUMF.) Those citations are omitted in the SUMF citations that follow.

12

tween November 2014 and March 2015. (Id. ¶ 30.) Those invoices postdate the execution of the FSA, and so qualify as Red Hot's Collateral under the FSA. (Id.) Under section 10.1.1 of the FSA, Red Hot agreed that, if it had outstanding obligations to Midland, Midland was authorized, inter alia, to "[r]eceive" or "take" the "proceeds of any Collateral[.]" (Id. ¶ 31 (alteration in original).) Midland contends that, because the Disputed Funds are "proceeds" of Collateral pursuant to the FSA, Midland is entitled to the Disputed Funds. (Id. ¶ 32.)

The Court has reviewed those portions of the record Midland has submitted. There is no genuine dispute as to any material fact supporting Midland's Motion. Midland is entitled to judgment as a matter of law. The Summary-Judgment Motion is GRANTED.[7]

---

[7] As discussed above (see Section I supra), two parties -- Red Hot and RHI -- are in default. Midland argues that "[n]otwithstanding that defaults have been entered against these two defendants, it is appropriate for the court to enter summary judgment against them." (Def. Midland Am. Capital Corp.'s Mem. of Law in Supp. of Mot. for Summ. J. ¶ 5 (citing cases), ECF No. 41.) Midland also argues that summary judgment is permissible although, pursuant to Federal Rule of Civil Procedure 5(a)(2), it did not serve Red Hot or RHI with the Summary-Judgment Motion. See Fed. R. Civ. P. 5(a)(2) ("No service is required on a party who is in default for failing to appear."). Midland is correct. See, e.g., Rood v. Nelson, No. 2:12-CV-00893-GMN-NJ, 2014 WL 4635585, at *6 (D. Nev. Sept. 15, 2014) ("[N]umerous district courts have recognized that, '[n]othing in Federal Rule of Civil Procedure 56 appears to prevent a party from seeking summary judgment against a party in default.' In fact, a district court may grant a motion for summary judgment against a defendant in default even if, as in the instant case, the movant

**V. CONCLUSION**

For the reasons discussed above, Midland's Summary-Judgment Motion is GRANTED. Judgment will enter in favor of Midland.

So ordered this 27th day of June, 2017.

/s/ Samuel H. Mays, Jr.
SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE

---

was excused from serving the motion pursuant to Rule 5(a)(2)." (citations omitted)); see also, e.g., Allstate Ins. Co. v. Davis, No. 5:08-CV-00039-WRW, 2008 WL 2428871, at *1 (E.D. Ark. June 12, 2008) (granting summary-judgment motion notwithstanding failure to serve party based on Rule 5(a)(2)). Summary judgment is appropriate as to Red Hot and RMI. It is also appropriate as to Branch, who, although no default has been entered against him, was served with a copy of the Summary-Judgment Motion and has failed to respond.

14